IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JULIE M. SIGWART, Individually and as Trustee of the Revocable Living Trust Dolphin Star Trust Dated December 10, 2003, | ) ) ) ) ) ) | CIVIL 13-00529 LEK-RLP |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| U.S. BANK NATIONAL ASSOCIATION, also known as U.S. BANK N.A., a national banking association; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS *COMPLAINT***

Before the Court is Defendants U.S. Bank National Association ("US Bank") and Mortgage Electronic Registration Systems, Inc.'s ("MERS", collectively "Defendants") Motion to Dismiss *Complaint* ("Motion"), filed January 10, 2014.  [Dkt. no. 11.]  Plaintiff Julie M. Sigwart ("Plaintiff") filed her memorandum in opposition on February 14, 2014, and Defendants filed their reply on February 24, 2014.  [Dkt. nos. 20, 21.]

This matter came on for hearing on March 12, 2014. Appearing on behalf of Plaintiff were James J. Bickerton, Esq., and John F. Perkin, Esq., and appearing on behalf of Defendants was Glenn T. Melchinger, Esq.  After careful consideration of the

Motion, supporting and opposing memoranda, and the arguments of
counsel, Defendants' Motion is HEREBY GRANTED for the reasons set
forth below.

## BACKGROUND

Plaintiff, a California resident, filed her Complaint
against US Bank and MERS, which have their principal places of
business in Ohio and Virginia, respectively, in connection with
the foreclosure of her property at 210 Humupea Place, Kihei,
Maui, Hawai`i 96753 ("the Property").  [Complaint at ¶¶ 1-2,
14(3),[1] 5, 9, 10.]  Though not stated, it appears that US Bank
held the mortgage for the Property ("the Mortgage") at the time
of the foreclosure.  Plaintiff alleges that MERS acted as an
agent of US Bank, and thus US Bank is vicariously liable for
MERS's actions during the foreclosure process.  [Id. at ¶ 15(3).]
MERS (or US Bank[2]), in turn, retained The Law Office of David B.
Rosen ("the Rosen Firm" or "the Firm"), which is not named as a
defendant in the Complaint, to "perform any and all actions in
connection with the non-judicial foreclosure" of the Property.
[Id. at ¶ 7.]  This, Plaintiff alleges, makes Defendants,
"[p]ursuant to the doctrine of *respondent*

---

[1] Plaintiff inadvertently included two paragraphs numbered
"14" and "15" — one set on page 3 and the other on pages 5-6.

[2] It is not clear from the Complaint which party retained
the Rosen Firm.  In paragraph 7, Plaintiff alleges that MERS
retained the Rosen Firm, but in paragraph 14(5) Plaintiff claims
US Bank did.

*superior*, . . . vicariously liable for any and all actions
performed by their agent, the Rosen Firm, in connection with the
foreclosure . . . . " [Id. at ¶ 8.]

Plaintiff owned the Property, and held it as a trustee
of a living trust named the Dolphin Star Trust Dated December 10,
2003. [Id. at ¶ 10.]  It was mortgaged as security for a loan of
$353,500, and the Mortgage contained a power of sale provision
permitting non-judicial foreclosure.  [Id. at ¶¶ 11-12.]
Plaintiff admits that she "defaulted on the note secured by her
mortgage" and, thereafter, the Rosen Firm commenced foreclosure
under Part I of Haw. Rev. Stat. Chapter 667.[3]  [Id. at ¶¶ 14-15.]
Plaintiff alleges that the Rosen Firm was obligated to
"(a) strictly comply with the power of sales terms and (b) adhere
to common law duties imposed on holders of a power of sale by
Hawai`i for over 100 years" and that it did not do so,
specifically that it violated the Mortgage, Chapter 667, Haw.
Rev. Stat. § 480-2, and other common law duties.  [Id. at ¶¶ 15-
20.]  Plaintiff alleges that these violations made the auction
sale unlawful and that "Plaintiff has been harmed because she
lost title to and possession of her properties [sic] in this
unlawful sale."  [Id. at ¶ 20.]  She also claims that there was

---

[3] Haw. Rev. Stat. Chapter 667 was revised in 2012, so an
earlier, now-outdated version was operative at the time of the
foreclosure.  All citations to Chapter 667 in this Order are to
the 2008 version.

"substantial equity" in the Property, which she lost due to Defendants' unlawful acts.  [Id. at ¶ 60.]

According to Plaintiff, Defendants and the Rosen Firm breached their duties to Plaintiff to get the best possible price for the Property from the foreclosure sale in four specific ways:

First, the Rosen Firm noticed the auction sale to be twenty-eight days after the first published advertisement of sale, as opposed to twenty-nine days after as statutory law purportedly requires.  [Id. at ¶¶ 21a., 23-31.]  Plaintiff claims that § 667-7 requires that an auction sale date must be "'*after the expiration of* four weeks from the date when first advertised'" and that Haw. Rev. Stat. § 1-29 requires "exclusion of the first day of any period."  [Id. at ¶¶ 23-25 (emphasis in Complaint).]  Thus, the foreclosure sale date must be twenty-nine days after the first publication of the notice.  The foreclosure notice was published three times, on July 3, 10 and 17, 2009, with a sale date of July 31, 2009, only twenty-eight days after the first publication date.  [Id. at ¶ 29.]  Therefore, Plaintiff claims that no lawful sale date was ever published.  [Id. at ¶ 31.]  Further, Plaintiff alleges that the Rosen Firm placed the auction date out only twenty-eight days in over seventy-five percent of the US Bank foreclosures it handled, making it a common practice of the Firm.  [Id. at ¶ 27.]

4

Second, the Rosen Firm and Defendants allegedly breached section 22 of the Mortgage, and thus acted unfairly and or/deceptively in violation of Haw. Rev. Stat. § 480-2, by not publishing notice of a new sale date when they moved the auction date back.  [Id. at ¶¶ 21b., 32-43.]  Plaintiff claims that section 22 of the Mortgage requires the foreclosed property, "at a minimum, [ ] be sold on a date that was advertised by publication."  [Id. at ¶ 33.]  The Rosen Firm postponed the auction date from July 31, 2009 until August 28, 2009 without ever "publishing" the new date, which Plaintiff claims is the Rosen Firm's common practice.  [Id. at ¶¶ 36, 38.]  Plaintiff admits that the Affidavit of Foreclosure ("the Affidavit") states that a "postponement was cried on July 31, 2009," but appears to claim that oral notice of postponement is improper.  [Id. at ¶¶ 39-43.]

Third, Defendants advertised that they were selling the Property with a quitclaim deed, rather than a warranty deed, which brought a lower price, thereby allegedly breaching a duty to Plaintiff to get the best possible price for the Property. [Id. at ¶¶ 21c., 44-48.]  Plaintiff alleges that Defendants knew that the Property was unencumbered and that Plaintiff herself could have transferred it with a warranty deed.  [Id. at ¶ 46.] Plaintiff claims that this is a common practice of US Bank, whereby the bank purchases deeds at low quitclaim prices and

resells them at higher prices via warranty deed. [Id. at ¶¶ 45, 48.]

Fourth, the Rosen Firm violated Chapter 667 by publishing the notice of foreclosure in a County of Hawai`i newspaper that is not in general circulation on Maui. [Id. at ¶¶ 21d., 49-51.] Plaintiff alleges that Haw. Rev. Stat. § 667-5(a)(1) requires publication of the notice of the foreclosure sale "'in a newspaper having a general circulation in the county in which the mortgaged property lies.'" [Id. at ¶ 50.] She claims that the Hawaii Tribune-Herald, where the Rosen Firm noticed the auction, has a general circulation on the island of Hawai`i, but not on Maui. [Id. at ¶ 49.] Further, she alleges that the Affidavit falsely and deceptively stated that the notice was first filed in the Maui News. [Id. at ¶ 51.]

Plaintiff alleges that she is entitled to treble damages under Chapter 480. She alleges that she is a "consumer" within the meaning of § 480-1 and that the four acts[4] she complains of (and the false disclosure in the Affidavit),

_____

[4] Since Plaintiff alleges that it is a common practice of the Rosen Firm to set the auction date on the twenty-eighth day, and to postpone with no written notice, and for US Bank to purchase foreclosed property by quitclaim deed and resell with a warranty deed, the Court will refer to these as "the 28-Day Practice," "the Postponement Practice," and "the Quitclaim Practice." The Postponement and Quitclaim Practices were challenged in other cases, brought by the same counsel, before this district court. See infra Discussion § II.C.3. Also, the Court refers to the Firm's allegedly improper publication in the Hawai`i Tribune-Herald as "the Hawai`i County Publication."

6

together and separately, fall within Hawaii's Unfair and
Deceptive Act and Practices ("UDAP") statute and were
"substantial factors in completing the foreclosure . . . ."  [Id.
at ¶¶ 52-57.]  Plaintiff alleges that these acts "caused
Plaintiff to lose title to and possession of her Property
unlawfully" and also caused "a loss of her equity in the
Property[.]"  [Id. at ¶ 58.]

     Plaintiff alleges that the $383,712.13 foreclosure
auction offer by US Bank as the only bidder was well below the
market value of the Property of about $600,000.  [Id. at ¶ 59.]
Plaintiff also claims that she was directly and proximately
"harmed and injured in that she lost title, possession and
occupancy of her Property" on October 15, 2009.  [Id. at ¶¶ 62-
64.]  Plaintiff alleges that she is entitled to damages,
attorneys' fees, prejudgment interest, treble damages, punitive
damages, and other appropriate relief.  [Id. at pg. 20, Prayer
for Relief.]

**DISCUSSION**

**I.  <u>Standing</u>**

     As a threshold matter, Defendants argue that Plaintiff
does not have standing to bring this lawsuit because she
surrendered all rights to the Property in a bankruptcy proceeding
prior to the foreclosure sale.  [Reply at 3, 6-13.]  Defendants
first raised this argument in their Reply, claiming that they

7

discovered Plaintiff's bankruptcy proceeding only after receiving the Memorandum in Opposition, and not earlier, specifically because Plaintiff did not include the bankruptcy case in her statement of related cases. [Reply at 3 (citing dkt. no. 17, at 7).]  While it is generally improper to raise an argument for the first time in a reply brief, <u>see</u> Local Rule LR7.4, where, as here, the argument goes to the Court's very basis for subject matter jurisdiction, the Court may consider it.  Accordingly, on March 7, 2014, the Court issued an order raising this issue, [dkt. no. 23,] and heard oral argument on it at the hearing on March 12, 2014.  The Court now finds that, for purposes of the current Motion only, Plaintiff has a sufficient factual basis for standing.  <u>See</u> <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1068 (9th Cir. 2011) (stating that at pleading stage, general factual allegations showing a plaintiff has suffered injury suffice).

        "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"  <u>Clapper v. Amnesty Int'l USA</u>, 133 S. Ct. 1138, 1147 (2013) (quoting <u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139, ----, 130 S. Ct. 2743, 2752, 177 L. Ed. 2d 461 (2010)).  Thus, Plaintiff must be able to point to an injury that is fairly traceable to the allegedly wrongful foreclosure practices.  Defendants argue that Plaintiff cannot do this

8

because she had no legal right to the Property at the time of the foreclosure.

To support their argument, Defendants cite to two documents on the bankruptcy docket.  [Reply, Decl. of Glenn T. Melchinger ("Melchinger Reply Decl."), Exhs. B & C.]  Exhibit B is a one-page document, filed May 1, 2009, signed by Plaintiff and titled, "Declaration of Debtor re: Surrender of Property," in which Plaintiff states that she "relinquishes any and all legal, equitable and possessory interests" in the Property.  [In re Sigwart, 08-01664 (dkt. no. 74).]  Exhibit C includes a bankruptcy schedule, filed April 3, 2009, where Plaintiff states her intention to surrender the Property.  [Id. (dkt. no. 65), at Statement of Intention, pg. 2.]

Defendants first argue that, since Plaintiff stated her intention to surrender the Property to support her discharge from bankruptcy, she should now be estopped from challenging the foreclosure.  [Reply at 8-9.]  For support, Defendants describe Ibanez v. U.S. Bank National Ass'n, 856 F. Supp. 2d 273 (D. Mass. 2012), where a Massachusetts district court held that a debtor who had stated an intention to surrender property in bankruptcy could not bring a wrongful foreclosure lawsuit to recover damages for the sale of that same property.  [Id.]

But, unlike the Ibanez Court, numerous courts, including the Bankruptcy Appellate Panel of the Ninth Circuit,

have held that 11 U.S.C. § 521, which requires the statement of
intention, is "essentially a notice statute" and does not abridge
a debtor's substantive rights to her property under state law.
In re Mayton, 208 B.R. 61, 68 (B.A.P. 9th Cir. 1997); see also,
e.g., In re Parker, 139 F.3d 668, 673 (9th Cir. 1998)
(acknowledging Mayton), *superceded by statute on other grounds,
as recognized in*, In re Dumont, 581 F.3d 1104 (9th Cir. 2009).
The purpose of the statement of intention is to notify creditors
of a debtor's interest in selling property so they may move to
lift the automatic stay that results from initiation of the
bankruptcy proceeding, see Mayton, 208 B.R. at 67, as at least
one creditor did in Plaintiff's bankruptcy [In re Sigwart, 08-
01664 (dkt. no. 67)].  But the notice requirement does not "alter
the debtor's or the trustee's rights with regard to such
property . . . ."  11 U.S.C. § 521(a)(2).  Thus, Plaintiff's
filing of a notice of intention to surrender the Property does
not preclude her from bringing suit under state law to challenge
the foreclosure procedure.

        Defendants also argue that, not only did Plaintiff
state that she intended to surrender the Property, she actually
did surrender it, which divested her of all legal right to the
Property.  [Reply at 6-7 (citing Melchinger Reply Decl., Exh.
B).]  Upon the Court's review of the bankruptcy docket, however,
it appears that, while Plaintiff "surrendered" the Property to

10

the trustee to sell, in fact, the trustee did not sell it.  [In re Sigwart, 08-01664 (dkt. no. 76).]  The Property, therefore, reverted to Plaintiff when the bankruptcy judge discharged the debt and issued its final decree on July 27, 2009.  [Id. (dkt. nos. 85, 87).]  As of August 28, 2009, when the Rosen Firm auctioned the Property, Plaintiff still owned it, and thus, for purposes of the current Motion only, Plaintiff has a sufficient factual basis for standing.

## II.  Motion to Dismiss

### A.  Vicarious Liability

Defendants argue that the Complaint fails to state a claim against them because, other than the Quitclaim Practice, all of the allegations focus on the acts of the Rosen Firm, and not on any actions of Defendants.  [Mem. in Supp. of Motion at 5-6 (citing Complaint at ¶¶ 7, 15, 27, 36, 38, 49, 51).]  They therefore claim that Plaintiff's limited factual allegations supporting vicarious liability fail to state a claim under Fed. R. Civ. P. 9(b) and 12(b)(6).  [Id. at 7, 12-14.]  This Court, however, finds that Plaintiff's complaint alleges sufficient facts to state a plausible claim based on vicarious liability. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Hawai`i Supreme Court recently held,

> An employer is vicariously liable for the torts of its agents or employees committed in the scope of their employment.  State v. Hoshijo ex rel. White (White), 102 Hawai`i 307, 319, 76 P.3d

11

550, 562 (2003) ("'[G]enerally, a principal can only be held vicariously liable for the actions of an agent under the theory of respondeat superior.'").  In White, this court cited the Second Restatement § 219, which indicated that a principal may be subject to liability for the acts of his agents or employees if the agents committed a tort "while acting in the scope of their employment."  Second Restatement § 219(1).

As explained in White, conduct is within the scope of employment if "(a) it is of the kind that he [or she] is employed to perform, (b) it occurs substantially within the authorized time and space limits, and (c) it is actuated at least in part, by a purpose to serve the master[.]"  White, 102 Hawai`i at 319-320, 76 P.3d at 562-63 (quoting Second Restatement § 228).  Further, an act may fall within the scope of employment even if it is forbidden by the employer.  Id. at 320, 76 P.3d at 563 ("[A]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment.") (quoting Second Restatement § 230).

Lales v. Wholesale Motors Co., No. SCWC-28516, 2014 WL 560829, at

*44 (Hawai`i Feb. 13, 2014) (alterations in Lales) (footnote

omitted).  "'A principal who puts a servant or other agent in a

position which enables the [servant], while apparently acting

within his authority, to commit a fraud upon third persons is

subject to liability to such third persons for fraud.'"  White,

102 Hawai`i at 319, 76 P.3d at 562 (alteration in White) (quoting

Second Restatement § 261 at 570).

Plaintiff alleges that US Bank hired MERS to act as its

agent and that Defendants retained the Rosen Firm "as Defendants'

agent to perform any and all actions in connection with the

nonjudicial foreclosure" of the Property, and thus Defendants are

vicariously liable for the acts of the Rosen Firm "in connection with the foreclosure[.]" [Complaint at ¶¶ 15(3), 7-8.] Taken in the light most favorable to the nonmoving party, see Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (th Cir. 1996), the Rosen Firm's four alleged acts at issue in this case were "committed in the scope of [the Rosen Firm's] employment." See Lales, 2014 WL 560829, at *44; Johnson v. Lucent Techs. Inc., 653 F.3d 1000, 1010 (9th Cir. 2011). Further, Plaintiff alleges that the Rosen Firm's acts perpetuated a fraud on her that benefitted Defendants, insofar as it allowed US Bank to recover the principal of the loan and resell the Property at a higher price. See White, 102 Hawai`i at 319, 76 P.3d at 562. Taken together, Plaintiff alleges sufficient facts to support a plausible claim based on vicarious liability against Defendants.

> **B.     Notice and Corrective Action Provision**

        Defendants also argue that the Court should dismiss the Complaint in its entirety because the Mortgage includes a notice and corrective action provision, and Plaintiff does not allege that she notified Defendants of any breach of rights under the Mortgage or provided a reasonable period to cure. [Mem. in Supp. of Motion at 9-11.] Section 20 of the Mortgage provides,

> Neither Borrower nor Lender may commence, join, or
> be joined to any judicial action (as either an
> individual litigant or the member of a class) that
> arises from the other party's actions pursuant to

> this Security Instrument or that alleges that the
> other party has breached any provision of, or any
> duty owed by reason of, this Security Instrument
> *until such Borrower or Lender has <u>notified</u> the*
> *other party (with such notice given in compliance*
> *with the requirements of Section 15) of such*
> *alleged breach and afforded the other party hereto*
> *a <u>reasonable period after the giving of such</u>*
> *<u>notice to take corrective action</u>*.

[<u>Id.</u> at 10 (emphasis in Mem. in Supp.) (quoting Motion, Decl. of

Glenn T. Melchinger ("Melchinger Decl."), Exh. A at § 20)].[5]

Plaintiff cites to cases that allowed UDAP-type fraud claims to

go forward in spite of similar cure provisions and argues that

"¶20 does not bar a statutory consumer protection claim for

'unfair' or 'deceptive' practices." [Mem. in Opp. at 30.]   The

Court does not read those cases so broadly since such a rule

would allow a plaintiff to style mortgage-based violations as

"unfair business practices" and circumvent the cure provision.

While some cases do create an exception for UDAP-type claims,

they also require that the "claims exist independently of the

---

[5] In general, under Fed. R. Civ. P. 12(b)(6), review is
limited to the contents of the complaint. <u>See, e.g.</u>, <u>Sprewell v.
Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).
"However, courts may 'consider certain materials-documents
attached to the complaint, documents incorporated by reference in
the complaint, or matters of judicial notice-without converting
the motion to dismiss into a motion for summary judgment.'"
<u>Lindsay v. Bank of Am., N.A.</u>, Civil No. 12-00277 LEK-BMK, 2012 WL
5198160, at *8 (D. Hawai`i Oct. 19, 2012) (quoting <u>United States
v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003)).   Plaintiff refers
to the Mortgage in multiple places in the Complaint, <u>e.g.</u>,
Complaint at ¶¶ 11-13, 33-34, and thus it is proper to consider
the text of the Mortgage here without converting the Motion into
a motion for summary judgment.

parties' mortgage contract." <u>Beyer v. Countrywide Home Loans
Servicing LP</u>, No. C07-1512MJP, 2008 WL 1791506, at *3 (W.D. Wash.
Apr. 18, 2008), *aff'd*, 359 Fed. Appx. 701 (9th Cir. 2009); <u>see
also</u> <u>Kerns v. United States</u>, No. 3:12CV490-JRS, 2012 WL 5877479,
at *4 (E.D. Va. Nov. 20, 2012).

        The issue here is a close one.  On one hand, the power
of sale provision in the Mortgage requires the lender to give
notice to the borrower before foreclosing, publish the notice of
sale, and pay proceeds in excess of expenses and the security
interest to those so entitled to them.  [Melchinger Decl., Exh. A
at § 22.]  On the other, Hawai`i statute, and not the Mortgage,
creates the specific requirements that Plaintiff alleges
Defendants have violated.  Another court, facing a similar issue,
framed it this way: "The provision applies if Plaintiff is
alleging that U.S. Bank breached a duty 'owed by reason of' the
mortgage." <u>St. Breux v. U.S. Bank, Nat'l Ass'n</u>, 919 F. Supp. 2d
1371, 1375 (S.D. Fla. 2013).  The court continued,

              The decision of whether the notice and cure
        provision applies in this case is a close one.
        The provision only applies if U.S. Bank breached
        "any provision of, or any duty owed by reason of"
        the mortgage.  Though U.S. Bank makes a fair
        but-for argument, the Court concludes that the
        duty to disclose the name of the owner or master
        servicer is not a duty owed by reason of the
        mortgage.  It is a duty owed by reason of [the
        Truth-in-Lending Act ("TILA")].  The parties have
        not directed the Court to any provision in the
        mortgage requiring U.S. Bank or its servicer to
        provide the name, address, and phone number of the
        owner or master servicer.  In the absence of TILA,

                              15

> there would be no suit.  The claim is not directly
> related to the mortgage, so the notice and cure
> provision does not apply.

Id. at 1376.  Similarly, here the specific duties that Defendants

allegedly violated are "owed by reason of" Chapter 667, not the

Mortgage.  Granted, the broad language of section 20 could be

read to apply to any conduct related in any way to foreclosure

"pursuant to" the Mortgage.  This Court, however, agrees with the

numerous courts that have considered this issue in the past, and

declines to create a new, broad interpretation of this provision.

For these reasons, the Court finds that section 20 is

inapplicable to this lawsuit.[6]

The one exception to this finding is regarding

Plaintiff's allegations that directly rely on the Mortgage.

Plaintiff alleges that section 22 of the Mortgage requires

Defendants to publish all sale dates, including postponed dates.

[Complaint at ¶¶ 33-34.]  To the extent that Plaintiff's UDAP

claim regarding the Postponement Practice allegation is based on

the specific language of section 22 of the Mortgage, and not on

Hawai`i law, the Complaint is DISMISSED WITH PREJUDICE for

---

[6]  Further, the Court rejects Defendants' argument that
Plaintiff's challenge to the foreclosure process is untimely
under Aames Funding Corp. v. Mores, 107 Hawai`i 95, 110 P.3d 1042
(2005).  Aames holds that challenges to the right to foreclose
must be brought before new title is recorded after foreclosure.
Id. at 102-03, 110 P.3d 1049-50.  Since Plaintiff does not
challenge Defendants' right to foreclose (or attempt to void the
sale), the Aames rule does not bar the Complaint here.

failure to comply with the notice and corrective action provision

in Plaintiff's Mortgage.  See Cal. ex rel. Cal. Dep't of Toxic

Substances Control v. Neville Chem. Co., 358 F.3d 661, 673 (9th

Cir. 2004) ("denial of leave to amend is appropriate if the

amendment would be futile") (internal quotations and citations

omitted).

### C.  Acts Supporting a UDAP Claim

Defendants argue that Plaintiff fails to allege a

viable UDAP claim.  This Court has held that to state a claim

under § 480-13, "the plaintiff must demonstrate: (1) a violation

of section 480-2; (2) injury to the consumer caused by such a

violation; and (3) proof of the amount of damages."  Lowther v.

U.S. Bank N.A., Civil No. 13-00235 LEK-BMK, 2013 WL 4777129, at

*16 (D. Hawai`i Sept. 4, 2013) (citations omitted).

> Under the Hawaii Unfair and Deceptive
> Business Practice Act ("UDAP") it is unlawful to
> engage in "unfair or deceptive acts or practices
> in the conduct of any trade or commerce."  Haw.
> Rev. Stat. § 480-2(a).  The Hawaii Supreme Court
> describes "deceptive acts or practices" as having
> "the capacity or tendency to mislead or deceive."
> Courbat v. Dahana Ranch, Inc., 111 Hawai`i 254,
> 141 P.3d 427, 434-435 (Haw. 2006) (quoting State
> by Bronster v. U.S. Steel Corp., 82 Hawai`i 32,
> 919 P.2d 294, 312-13 (Haw. 1996)).  The Hawaii
> Supreme Court has adopted the Federal Trade
> Commission's three-part analytical Cliffdale
> Assocs. test for deception.  Id. (citing In re
> Cliffdale Assocs., Inc., 103 F.T.C. 110, Trade
> Cas. (CCH) P22137 (1984)).  Under the Cliffdale
> Assocs. test, a deceptive act or practice is (1) a
> representation, omission, or practice that (2) is
> likely to mislead consumers acting reasonably

17

under circumstances where (3) the representation, omission, or practice is material.  Id.; see FTC v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir. 1994).  "A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'"  Id. (citing Novartis Corp. v. FTC, 343 U.S. App. D.C. 111, 223 F.3d 783, 786 (D.C. Cir. 2000)).

Any allegation under H.R.S. § 480-2(a) involving claims of fraudulent business practices must be plead with particularity pursuant to Fed. R. Civ. P. 9(b).  Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232-1233 (D. Haw. 2010).  Rule 9(b) requires a party asserting a claim involving fraud to "state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  The claim must "be accompanied by the 'who, what, when, where, and how' of the misconduct charged."  Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) (internal citation and quotation marks omitted); see Alan Neuman Prod., Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1988).

Almaden v. Peninsula Mortg., Inc., Civ. No. 12-00390 HG-BMK, 2012 WL 6738512, at *9 (D. Hawai`i Dec. 31, 2012).

Further, this district court has found that Chapter 480 applies to mortgage loans.

Mortgage loans made by financial institutions fall within the scope of Hawaii's unfair and deceptive trade practices statute.  Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawai`i 213, 11 P.3d 1, 15 (2000) ("[T]he transaction at issue in the present matter falls within the ambit of HRS ch. 480, inasmuch as (1) a loan extended by a financial institution is activity involving 'conduct of any trade and commerce' and (2) loan borrowers are 'consumers' within the meaning of HRS § 480-1 (1993).").

18

> A practice is unfair when it "offends
> established public policy and when the practice is
> immoral, unethical, oppressive, unscrupulous or
> substantially injurious to consumers." Balthazar
> v. Verizon Haw., Inc., 109 Hawai`i 69, 123 P.3d
> 194, 202 (2005). . . .

Newcomb v. Cambridge Home Loans, Inc., 861 F. Supp. 2d 1153, 1168

(D. Hawai`i 2012) (alterations in Newcomb).

### 1.   28-Day Practice

Defendants argue that § 667-7 simply requires that a

seller set the foreclosure sale date twenty-eight days from the

date of first publication of the foreclosure sale notice, and

therefore the Rosen Firm did not violate the statute by placing

the original sale date of the Property on July 31, 2009 – twenty-

eight days after first publication on July 3, 2009.  [Reply at

11.]  Plaintiff argues that the statute requires publication

after the twenty-eighth day, and thus the earliest the Rosen Firm

could place the sale date was August 1, 2009.  [Mem. in Opp. at

12.]

Haw. Rev. Stat. § 667-7(a) states, "[t]he notice of

intention of foreclosure shall contain: (1) A description of the

mortgaged property; and (2) A statement of the time and place

proposed for the sale thereof at any time **after the expiration of**

**four weeks from the date when first advertised**."  (Emphasis

added.)  The Court agrees with Plaintiff that the plain and

obvious meaning of this statute is that the sale must be set more

19

than twenty-eight days from first publication.  "[W]here the statutory language is plain and unambiguous, [the court's] sole duty is to give effect to its plain and obvious meaning." <u>Pila`a 400, LLC v. Bd. of Land & Natural Res.</u>, No. SCWC-28358, 2014 WL 594120, at *33 (Hawai`i Feb. 14, 2014) (some alterations in <u>Pila`a</u>) (internal quotation marks and citations omitted). Further, this meaning conforms with the Hawai`i computation of time statute, which states that "[t]he time in which any act provided by law is to be done is computed by excluding the first day and including the last."  Haw. Rev. Stat. § 1-29.  Excluding July 3, 2009, since it was "the first day," and counting twenty-eight days, § 667-7(a) provides that the earliest possible sale date should have been August 1, 2009.  Thus, Plaintiff has stated sufficient allegations that, if proven, would establish that the initial sale date violated § 667-7(a).

Further, Plaintiff alleges that "The Rosen Firm published proposed sale dates that were only 28 days after first publication ***in over 75%*** of U.S. BANK foreclosures that they handled, thus showing that these acts by the Rosen Firm were not isolated but constituted a practice."  [Complaint at ¶ 27 (emphasis in original).]  Together with the mandate that "Hawaii law requires strict compliance with statutory foreclosure procedures," <u>see</u> <u>In re Kekauoha-Alisa</u>, 674 F.3d 1083, 1090 (9th Cir. 2012) (discussing <u>Lee v. HSBC Bank USA</u>, 121 Hawai`i 287,

291, 218 P.3d 775, 779 (2009)), the Court finds that, construed in the light most favorable to the nonmoving party, Plaintiff has plausibly pled that the 28-Day Practice is unfair and deceptive under Chapter 480.  See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## 2.  **<u>Hawai`i County Publication</u>**

Defendants also argue that Plaintiff's allegation regarding publication of the foreclosure sale in the <u>Hawaii Tribune-Herald</u> is "conclusory" and that, in any event, the <u>Tribune-Herald</u> had an online presence in 2009, and publication in a newspaper of "limited circulation" is sufficient under § 667-5. [Mem. in Supp. of Motion at 20 & n.18.]  Haw. Rev. Stat. § 667-5(a) requires, *inter alia*, that, "[t]he attorney shall: (1) Give notice of the mortgagee's, successor's, or person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), . . . in a newspaper having a general circulation in the county in which the mortgaged property lies[.]"  Plaintiff alleges that the <u>Hawaii Tribune-Herald</u> has "no general circulation in the County of Maui." [Complaint at ¶ 49.]  While Defendant may dispute the actual circulation of the <u>Hawaii Tribune-Herald</u> on Maui and whether that presence is sufficient to fulfill the publication requirement, these are disputes of fact not well-suited to the motion to dismiss stage.

Plaintiff has pled facts regarding the Hawai`i County Publication with sufficient particularity to put Defendants on notice of the claim, and this practice could have been unfair or deceptive to Plaintiff as well as to other consumers interested in bidding on the Property.  See Kekauoha-Alisa, 674 F.3d at 1090 (requiring strict compliance with Chapter 667).

### 3.   Postponement and Quitclaim Practices

Defendants argue that this district court has already rejected arguments that practices identical to the Postponement and Quitclaim Practices support a valid UDAP claim.  [Mem. in Supp. of Motion at 1, 17-18, 19 (citing Lima v. Deutsche Bank Nat'l Trust Co., 943 F. Supp. 2d 1093 (D. Hawai`i 2013), as amended (May 6, 2013) (dismissing both Gibo v. U.S. Bank Nat'l Ass'n, No. 12-00514 SOM-RLP (D. Hawai`i) and Lima v. Deutsche Bank Nat'l Trust Co., No. 12-00509 SOM-RLP (D. Hawai`i)); Bald v. Wells Fargo Bank, Civil No. 13-00135 SOM/KSC, 2013 WL 3864449 (D. Hawai`i July 25, 2013).]  This Court agrees that the allegations in Lima, Gibo, and Bald ("the Similar Cases") are substantively identical to those that Plaintiff alleges.  Further, the Court finds the analysis and conclusions in the Similar Cases persuasive, and will follow them here.  Nothing in Chapter 667 or the Mortgage requires Defendants to advertise the sale as more than a quitclaim deed, or to postpone by publication rather than orally, as Plaintiff admits was done.  The Court agrees with

Chief United States District Judge Susan Oki Mollway that the decision of whether to require additional nonjudicial foreclosure safeguards is better left to the legislature than the courts. See Lima, 943 F. Supp. 2d at 1100; Bald, 2013 WL 3864449, at *5.

The only differences between the arguments before Chief Judge Mollway in the Similar Cases and the ones presented by Plaintiff here are the additional practices (the 28-Day Practice and the Hawai`i County Publication), and Plaintiff's argument that, since the initial notification of sale of the Property was improper, oral postponement under § 667-5(d) was not available to the Rosen Firm. See Mem. in Opp. at 21-22. Haw. Rev. Stat. § 667-5(d) provides, "Any sale, of which notice has been given as aforesaid, may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf." Plaintiff argues that, since the first foreclosure sale notice was improper – that is, notice was not "given as aforesaid" – oral postponement was improper. This interpretation stretches the language of § 667-5(d) and therefore this Court declines to adopt it. Further, this Court refuses the invitation to extend UDAP protection to nonjudicial foreclosure practices that fall outside of Chapter 667, such as the Postponement and Quitclaim Practices. For the foregoing reasons, the Court finds that Plaintiff's allegations regarding the Postponement and Quitclaim Practices do not support a UDAP claim,

23

and thus GRANTS Defendants' Motion with prejudice as to those
portions of Plaintiff's UDAP claim.

     D.   **Harm to Plaintiff**

     Finally, Defendants argue that Plaintiff's allegations
do not support a UDAP claim because Plaintiff has not
sufficiently pled "a specific injury traceable to the actions of
the Defendants[.]" [Mem. in Supp. of Motion at 1.]  First, they
argue that, because Plaintiff admits that she was in default and
does not claim that US Bank had no right to foreclose, Plaintiff
does not allege any cognizable injury.  [Id. at 1-2.]  While in
the Complaint Plaintiff alleges that Defendants' acts caused her
to lose title and possession of the Property, [Complaint at
¶¶ 20, 56, 58, 63, 64,] Plaintiff's memorandum in opposition and
her counsel's argument at the hearing make it clear that she does
not challenge US Bank's right to foreclose.  Rather, Plaintiff
solely seeks redress for some loss of equity in the Property she
allegedly suffered when US Bank sold her Property at below market
value.

     Plaintiff is correct that theoretically she has a right
to any remainder of the proceeds from the foreclosure sale after
other claims and expenses have been deducted.  Haw. Stat. Rev.
§ 667-10.  Thus, in theory, she could state a legally cognizable
theory of harm for loss of equity due to Defendants' violations
of Chapter 667, which resulted in the sale of the Property at a

deflated price.  In the Complaint, however, Plaintiff has not pled facts that support a plausible claim for relief under this theory.  Further, this Court does not read Chapter 667 to require that the mortgagee, when selling property by nonjudicial foreclosure, must sell the property at fair market value.

Defendants also argue that, to state a valid UDAP claim, Plaintiff must prove that she suffered damage arising specifically from the violations.  [Mem. in Supp. of Motion at 15-21.]  "[W]hile proof of a violation of chapter 480 is an essential element of an action under § 480-13, the mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause private damage."  Gomes v. Bank of Am., N.A., Civ. No. 12-00311 SOM/BMK, 2013 WL 2149743, *8 (D. Hawai`i May 15, 2013) (quoting Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai`i 224, 254 n.30, 982 P.2d 853, 883 n.30 (1999)). "Plaintiff must allege that she suffered damages as a result of Defendants' conduct that go beyond her speculative allegation of an unspecified loss of 'equity, as well as her past and future investment.'  Plaintiff's vague allegation of damages contains insufficient factual detail to meet the Rule 8 pleading standard."  Dias v. Fed. Nat'l Mortg. Ass'n, Civil No. 12-00394 DKW KSC, 2013 WL 6894453, at *10 (D. Hawai`i Dec. 31, 2013) (quotation marks and citation omitted).

The Court finds that Plaintiff's allegations of harm do not go beyond "speculative allegations."  Plaintiff does not provide any reason to believe that, by pushing the initial sale date back one day and publishing the notice in a newspaper that has general circulation on Maui, the auction would have attracted more buyers, willing to pay more for the Property.  In fact, Plaintiff concedes that the sale was postponed nearly one month to August 28, 2009, and the fact remains that, even at that later date, US Bank was the only bidder.  [Complaint at ¶¶ 28-40, 59.]

This reasoning is consistent with the bankruptcy court's decision in a similar foreclosure lawsuit.  In <u>In re Kekauoha-Alisa</u>, the Ninth Circuit affirmed a bankruptcy court's avoidance of sale, where the lender's failure to orally postpone the auction properly violated § 667-5 and amounted to a deceptive practice, but remanded to "determine the difference, if any, between Debtor's situation had Lenders properly postponed the foreclosure sale and Debtor's actual situation, given that the sale was improperly postponed."  674 F.3d at 1093.  The court explained that, "[t]his framing properly narrows the inquiry to the damage caused by Lenders' deceptive postponement."  <u>Id.</u> (citation omitted).  On remand, the bankruptcy court held,

> Second, having reviewed the record again, I now think that the improper notice of postponement did not cause the Debtor to lose the value of the equity in her property.  The defective postponement did not extinguish the Debtor's debt to the Lenders, discharge the lien of the

26

> mortgage, or preclude the Lenders from
> foreclosing.  It means only that the Lender must
> renotice the foreclosure for a later date.  Any
> damages flowing from the fact of the foreclosure
> are not compensable, because the Lender
> unquestionably had (and still has) the right to
> foreclose.  The only compensable damages are those
> caused by the wrongful postponement of the
> foreclosure—in other words, damages caused by the
> fact that the Lenders took ownership and
> possession of the Debtor's property before the
> Lenders were entitled to do so.

In re Kekauoha-Alisa, Bankruptcy No. 467,468, Adversary No. 06-90041, 2012 WL 3061511, at *2 (Bankr. D. Hawai`i July 26, 2012).

Thus, Plaintiff must allege facts, that if proven, would show that Defendants' notice of the one-day-early auction and publication on Hawai`i actually "cause[d] [Plaintiff] to lose the value of the equity in her property." See id.  To the extent that Plaintiff may be alleging loss of ownership and use of the Property, these portions of Plaintiff's UDAP claim are DISMISSED WITH PREJUDICE.  To the extent that Plaintiff alleges loss of equity from the foreclosure sale, the allegations are too vague to state a plausible claim and that portion of the UDAP claim is DISMISSED WITHOUT PREJUDICE.  See Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (holding that dismissal with prejudice is improper unless "the complaint could not be saved by any amendment" (quoting Lee v. City of Los Angeles, 250 F.3d 668, 692 (9th Cir. 2001))).

27

**CONCLUSION**

On the basis of the foregoing, Defendants U.S. Bank National Association and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss *Complaint*, filed January 10, 2014, is HEREBY GRANTED.  The following portions of the UDAP claim are DISMISSED WITH PREJUDICE:

- the portions of the UDAP claim based on the specific language of the Mortgage;

- the portions of the UDAP claim based on the Postponement and Quitclaim Practices; and

- the portions of the UDAP claim alleging damages arising from loss of ownership and use of the Property.

The following portions of the UDAP claim are DISMISSED WITHOUT PREJUDICE:

- the portions of the UDAP claim alleging damages from loss of equity due to Defendants' violations of Chapter 667.

To the extent that Plaintiff's claim has been dismissed without prejudice, this Court GRANTS Plaintiff leave to file a First Amended Complaint consistent with the terms of this Order. Plaintiff must file her First Amended Complaint by no later than April 30, 2014.  This Court CAUTIONS Plaintiff that, if she fails to file her First Amended Complaint by April 30, 2014, the portions of the claim which this Order dismissed without prejudice may be dismissed with prejudice.  Further, if

28

Plaintiff's First Amended Complaint fails to cure the defects identified in this Order or adds new parties, claims, or theories of liability, this Court may dismiss those claims with prejudice.

      IT IS SO ORDERED.

      DATED AT HONOLULU, HAWAII, March 31, 2014.



      /s/ Leslie E. Kobayashi
      Leslie E. Kobayashi
      United States District Judge

**JULIE M. SIGWART, ETC. VS. U.S. BANK NATIONAL ASSOCIATION, ET AL.;** CIVIL NO. 13-00529 LEK-RLP; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT