IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JULIE M. SIGWART, Individually and as Trustee of the Revocable Living Trust Dolphin Star Trust Dated December 10, 2003,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, also known as U.S. BANK N.A., a national banking association; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation,<br><br>　　　　Defendants. | CIVIL 13-00529 LEK-RLP |

**ORDER DENYING THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION, AND DAVID B. ROSEN'S MOTION TO INTERVENE**

　　　　Before the Court is the Law Office of David B. Rosen, a Law Corporation ("Rosen Firm"), and David B. Rosen's ("Rosen," collectively "Movants") Motion to Intervene ("Motion"), filed on April 11, 2014. [Dkt. no. 26.] Plaintiff Julie M. Sigwart ("Plaintiff") filed her memorandum in opposition on April 22, 2014, and Movants filed their reply on April 25, 2014.[1] [Dkt. nos. 28, 30.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the

---

[1] On April 22, 2014, Defendants U.S. Bank National Association ("U.S. Bank") and Mortgage Electronic Registration Systems, Inc. ("MERS," collectively "Defendants") filed their statement of no position regarding the Motion. [Dkt. no 29.]

Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").  After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Movants' Motion is HEREBY DENIED for the reasons set forth below.

## BACKGROUND

On March 31, 2014, this Court issued its Order Granting Defendants' Motion to Dismiss *Complaint* ("3/31/14 Order").  [Dkt. no 25.[2]]  Plaintiff's Complaint consists of a single count for violation of the Hawai`i Unfair and Deceptive Acts and Practices ("UDAP") law, and alleges that Defendants were vicariously liable for the fraudulent foreclosure practices of Defendants' agent, the Rosen Firm, in foreclosing on Plaintiff's property.  In the 3/31/14 Order, the Court dismissed the Complaint without prejudice, finding that Plaintiff's theory of damages was too vague to state a claim.  2014 WL 1322813, at *10-11.  The Court found, however, that Plaintiff's allegation that the Rosen Firm placed the auction date only twenty-eight days after the first notice – instead of the required twenty-nine days – in over seventy-five percent of the U.S. Bank foreclosures it handled ("the 28-Day Practice") stated a claim for violation of Haw. Rev. Stat. § 667-7 (2008).  Id. at *8-9.  In the Motion, Movants

---

[2] The 3/31/14 Order is also available at 2014 WL 1322813. Defendants filed their motion to dismiss on January 10, 2014. [Dkt. no. 11.]

2

attempt to intervene for the sole purpose of asking the Court to reconsider its finding regarding the 28-Day Practice. [Motion at 2.]

Plaintiff's attorneys are litigating two cases in state court against Movants, Sigwart v. Law Office of David B. Rosen, et al., Civil No. 13-12097-07 ECN ("Sigwart v. Rosen"), and Hungate v. Law Office of David B. Rosen, Civil No. 13-1-2146-08 RAN ("Hungate"), alleging that Movants violated the UDAP statute and Haw. Rev. Stat. Chapter 667 by, *inter alia*, engaging in the 28-Day Practice. [Motion, Decl. of David B. Rosen ("Rosen Decl.")[3], Exhs. 1, 2 (complaints).] On October 29, 2013, the Circuit Court of the First Circuit, State of Hawai`i ("circuit court") dismissed the complaint in Sigwart v. Rosen, finding that the plaintiffs lacked standing to pursue the UDAP claim. [Rosen Decl., Exh. 3 (order) at 2.] On November 5, 2014, the circuit court also dismissed the Hungate complaint, but found that "[w]ith respect to the HRS Chapter 667 claims, based on the allegations in the Complaint, the Rosen Defendants complied with the requirements of HRS §§ 667-5 and -7 as a matter of law."

---

[3] There are two nearly identical Rosen declarations included in Movants' filing. The first is the declaration to the Motion, which attaches, as Exhibit A, the proposed motion for reconsideration ("the Proposed Motion"). The Proposed Motion also includes a proposed Rosen declaration. The exhibits to these declarations (other than Exhibit A) are identical. In this Order the Court's citations to specific paragraphs refer to the declaration attached directly to the Motion.

[Rosen Decl., Exh. 4 (order) at 2.] Both decisions are on appeal. Movants are attempting to intervene in this case to, in essence, avoid inconsistent judgments between the state courts and this Court on the 28-Day Practice. They may only do so, however, if they have a right to intervene.

## **STANDARD**

Movants bring the Motion under Fed. R. Civ. P. 24(a)(2) for intervention as of right.[4] Rule 24(a) states, in pertinent part,

> On timely motion, the court must permit anyone to intervene who:
>
> . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To intervene, a movant must prove that it meets the following four elements:

> (1) the intervention application is timely;
> (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical

---

[4] Movants do not seek to intervene under Fed. R. Civ. P 24(b), and thus the Court does not consider permissive intervention. See United States v. Alisal Water Corp., 370 F.3d 915, 920 n.4 (9th Cir. 2004) (refusing to analyze permissive intervention where proposed intervenor "could have applied for permissive intervention, . . . but did not do so").

4

> matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 897 (9th Cir. 2011). These requirements should be "broadly interpreted in favor of intervention." Id. (citation omitted).

## DISCUSSION

### I. The Motion Is Timely

"Timeliness is a flexible concept; its determination is left to the district court's discretion." Alisal Water Corp., 370 F.3d at 921 (citation omitted). In determining the timeliness of a motion to intervene, courts look to "(1) the stage of the proceeding, (2) the prejudice to other parties, and (3) the reason for and length of the delay." Day v. Apoliona, 505 F.3d 963, 965 (9th Cir. 2007) (citation and internal quotation marks omitted). These factors also apply to limited-purpose motions to intervene. Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc., 62 F.3d 1217, 1219 (9th Cir. 1995). "A would-be intervenor's delay in joining the proceedings is excusable when the intervenor does not "'know[] or ha[ve] reason to know that his interests might be adversely affected by the outcome of litigation.'" Day, 505 F.3d at 965 (alterations in Day) (quoting Alisal Water Corp, 370 F.3d at 923). Prejudice is the "most important consideration in deciding

5

whether a motion to intervene is timely." Miller v. Ghirardelli Chocolate Co., No. C 12-04936 LB, 2013 WL 6776191, at *6 (N.D. Cal. Dec. 20, 2013) (citing United States v. Or., 745 F.2d 550, 552 (9th Cir. 1984)).

Here, Movants filed the Motion in an early stage of the litigation, for the limited purpose of challenging the 3/31/14 Order, within fourteen days of the issuance of that order. This was before the period for reconsideration of the 3/31/14 Order lapsed, see Local Rule LR60.1, and before the deadline set by the Court for Plaintiff to amend her Complaint, see 2014 WL 1322813, at *12. Rosen claims that he did not know about this lawsuit until February 26, 2014 – two days after Defendants filed their reply to the motion to dismiss – and thus there was a reason for the delay. [Mem. in Supp. of Motion at 12 (citing Rosen Decl. at ¶ 11).[5]] Finally, Plaintiff does not argue, and the Court does not see any indication, that the delay prejudiced her. For these reasons, the Court FINDS that the Motion is timely.

---

[5] "'[C]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections.'" Syngenta Seeds, Inc. v. Cnty. of Kauai, No. Civ. 14-00014BMK, 2014 WL 1631830, at *3 (D. Hawai`i Apr. 23, 2014) (quoting Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001)).

## II. **Impairment of a Significant Protectable Interest**[6]

"To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." Citizens for Balanced Use, 647 F.3d at 897 (citation omitted). A movant "need not show that the interest he asserts is one that is protected by statute under which litigation is brought. It is enough that the interest is protectable under any statute." Alisal Water Corp., 370 F.3d at 919 (citation and internal quotation marks omitted). The interest, however, may not be "several degrees removed" from the "backbone of [the] litigation." Id. at 920.

Where a court finds that a proposed intervenor has a significant protectable interest, it may "have little difficulty concluding that the disposition of [the] case may, as a practical matter, affect it." Cal. ex rel. Lockyer v. United States, 450 F.3d 436, 442 (9th Cir. 2006). "'If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .'" Citizens for Balanced Use, 647 F.3d at 898

---

[6] Since these elements are often intertwined, it is proper to consider them together. See, e.g., Greene v. United States, 996 F.2d 973 (9th Cir. 1993) (analyzing interest and impairment elements together); United States v. State of Or., 839 F.2d 635 (9th Cir. 1988) (considering impairment and adequacy of representation together).

7

(alteration in Citizens) (some citations omitted) (quoting Fed. R. Civ. P. 24 advisory committee note). But even if the lawsuit affects the "proposed intervenors' interests, their interests might not be *impaired* if they have other means to protect them." Lockyer, 450 F.3d at 442 (emphasis in Lockyer) (citation and internal quotation marks omitted).

Movants appear to argue that their significant protectable interest in this case is avoidance of an adverse ruling on the 28-Day Practice that could have a "persuasive *stare decisis* effect" on the plaintiffs' appeals in the state cases against them. [Mem. in Supp. of Motion at 9-10; Reply at 4-5.] While this Court acknowledges it must "broadly interpret" Movants' significant protectable interest "in favor of intervention," see Citizens for Balanced Use, 647 F.3d at 897, Movants' interest is too attenuated to permit intervention. First, as a jurisdictional point, the 3/31/14 Order will have no binding *stare decisis* effect on the state cases (or any similar state cases). Even where a Hawai`i state court confronts an issue of federal law or an issue of Hawai`i law that is analogous to federal law, federal court decisions are not binding. See, e.g., Arquero v. Hilton Hawaiian Vill. LLC, 104 Hawai`i 423, 430, 91 P.3d 505, 512 (2004) ("Of course, a federal court's interpretation of Title VII is not binding on this court's interpretation of civil rights laws adopted by the Hawai`i

8

legislature." (citation omitted)).  Here, the question of whether the 28-Day Practice violates § 667-7 is a pure state law question, so this Court's decisions would have even less effect. See, e.g., AlohaCare v. Ito, 126 Hawai`i 326, 349 n.40, 271 P.3d 621, 644 n.40 (2012) ("the decisions of federal courts on matters of state law are not dispositive").  Thus, Movants do not have a significant interest.

Second, even if Movants' "persuasive *stare decisis*" interest was significant, the cases that Movants selectively quote do not apply to the facts and procedural posture of this case.  Those opinions recognize that, in cases addressing federal remedial schemes, intervention may be proper where disposition of the case without the intervenor could significantly limit the intervenor's access to the remedy, or directly undermine earlier federal court decisions establishing the remedial rights.

In United States v. State of Oregon, 839 F.2d 635 (9th Cir. 1988) ("Oregon"), the Ninth Circuit reversed the denial of a motion to intervene by residents of the Fairview Training Center in a case brought by the United States Attorney General, challenging the conditions of that same mental institution.  The court based its decision on two grounds: (1) since the case directly involved conditions at the residents' institution it would "of necessity result in factual and legal determinations concerning the nature of those conditions" and thus have a

"persuasive *stare decisis* effect in any parallel or subsequent litigation"; and (2) because the case dealt with a plan that allocated limited Oregon state funds, denying intervention would limit resident's ability to influence the allocation of the funds. Id. at 638-39. Thus, the Ninth Circuit held that the residents were not adequately represented by the government and denial would practically impair the residents interests "after the court-ordered equitable remedies [were] in place." Id. at 639.

In Greene v. United States, 996 F.2d 973 (9th Cir. 1993), the Ninth Circuit refused to extend Oregon. In that case, the Tulalip tribe attempted to intervene in a dispute between the Samish tribe and the Department of the Interior regarding federal recognition of the Samish. The Tulalip argued that factual determinations made in the Samish case would threaten Tulalip treaty fishing rights and earlier federal court cases recognizing and overseeing those rights. Id. at 976-78. The Ninth Circuit found those "*stare de* effects" arguments "unpersuasive" since the Tulalip tribe was party to the other "ongoing" cases and "the Tulalip's interest in preserving the favorable effects of *stare decisis* is too speculative to warrant intervention." Id. at 977.

Oregon and Greene do not support Movants' arguments. They clarify that the *stare decisis* interest only applies in federal cases determining federal remedial rights. On the other

10

hand, Movants' alleged interest is based on state statutory law, and has nothing to do with a federal remedial scheme. See Oregon, 839 F.2d at 639 (limiting *stare decisis* interest to cases dealing with "court-ordered equitable remedies" like desegregation and hazardous waste clean up). Thus, denying intervention does not limit Movants' ability to claim rights in future litigation. Further, as in Greene, Movants are actually parties to the underlying cases where they fear *stare decisis* could apply, and thus they can freely litigate their rights there. See Greene, 996 F.2d at 977 (finding there could be no "*stare decisis* effect" on underlying cases because "the Tulalip are already parties"). Similarly, Movants' interest is "too speculative to warrant intervention." See id. at 977. For these reasons, Movants do not have a protectable interest that denial of the Motion would impair.

**III. Adequate Representation**

Although Movants' failure to identify a significant protectable interest is fatal to the Motion, for the sake of completeness, the Court now discusses adequacy of representation as well.

"The burden of showing inadequacy of representation is minimal and satisfied if the applicant can demonstrate that representation of its interests may be inadequate." Citizens for Balanced Use, 647 F.3d at 898 (internal quotation marks and

11

citation omitted). "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). "Where the party and the proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a compelling showing to the contrary." Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 951 (9th Cir. 2009) (internal quotation marks and citation omitted).

In considering whether the proposed intervenor rebuts the presumption, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." Id. at 952 (citation omitted). "[M]ere [] differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right." Id. at 954 (some alterations in Perry) (citations omitted).

Movants concede that they and Defendants share the same ultimate objective, [Mem. in Supp. of Motion at 12,] and thus the presumption of adequacy applies. Movants argue, however, that their interests "are not perfectly aligned" since Defendants did

12

not work with Movants on the briefing and did not "make all of the relevant arguments" that Movants complied with § 667-7. [Id. at 12-13.] Movants' arguments are insufficient to compel a finding that they are inadequately represented. Movants admit that Defendants did "address the merits" of the 28-Day Practice claim and describe three different arguments Defendants made, based on case law, the plain language of the statute, and statutory interpretation regarding time calculations. [Id. at 14.] In essence, Movants appear to argue that Defendants' representation was inadequate because Defendants did not cite all of the case law Movants would have, including the two state cases against them, and that Defendants did not spend enough time in their briefs arguing the point.

In reviewing the memorandum and the supporting documents, the Court concludes that Defendants did make all of the same arguments. Compare id. (what Defendants argued); with Proposed Motion at 2-3, 4-11. At most, any difference in the presentation of those arguments was a mere difference in strategy. See Perry, 587 F.3d at 954. And, contrary to Movants' argument, Defendants did not omit any necessary arguments that Movants would make that would have "prevent[ed] this Court from making incorrect conclusions[.]" [Mem. in Supp. of Motion at 14.] To the contrary, this Court granted Defendants' motion to dismiss, and Plaintiff has chosen not to amend her Complaint.

13

See Mem. in Opp. at 24 ("Plaintiff has no plans to amend her complaint"). The Court therefore FINDS Movants' interests are adequately represented.

**IV. Summary**

Although the Court finds the Motion is timely, since Movants do not have a significant protectable interest that would be impaired in their absence, and Defendants adequately represent Movants' interests, the Court CONCLUDES that the Motion fails under Fed. R. Civ. P. 24(a). The Court also REJECTS Plaintiff's other challenges to the Motion and to this Court's jurisdiction to rule on the Motion.[7] The Ninth Circuit has not so far

---

[7] The Court questions whether the Rooker-Feldman doctrine, Colorado River abstention, *res judicata*, and abatement operate as actual jurisdictional bars as Plaintiff argues, and finds that, in any event, they do not apply to this case. See, e.g., Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011) ("Rooker–Feldman is confined to cases of the kind from which the doctrine acquired its name: cases **brought by state-court losers** . . . inviting district court review and rejection of [the state court's] judgments." (alterations in Skinner) (emphasis added) (citation and internal quotation marks omitted)); Holder v. Holder, 305 F.3d 854, 867 (9th Cir. 2002) ("Under Colorado River, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court **to stay federal proceedings** pending the resolution of concurrent state court proceedings involving the same matter." (emphasis added) (citations omitted)); Castro v. Melchor, Civil No. 07-00558 LEK-BMK, 2012 WL 4092425, at *9 (D. Hawai`i Sept. 14, 2012) ("The party asserting res judicata/claim preclusion has the burden of establishing that . . . there was a final judgment on the merits," and "judgment is final where the time to appeal has expired without an appeal being taken." (citations omitted)); Shelton Eng'g Contractors, Ltd. v. Hawaiian Pac. Indus., Inc., 51 Haw. 242, 249, 456 P.2d 222, 226 (1969) (abatement only lies
(continued...)

required an independent analysis of standing beyond the requirements of Rule 42(a), and thus the Court does not here perform one. See Perry, 587 F.3d at 950 n.2 ("we in the past have resolved intervention questions without making reference to standing doctrine" (citation omitted)); Portland Audubon Soc'y. v. Hodel, 866 F.2d 302, 308 n.1 (9th Cir. 1989) (declining "to incorporate an independent standing inquiry into our circuit's intervention test"), *abrogated on other grounds by* Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173 (9th Cir. 2011).[8]

## CONCLUSION

On the basis of the foregoing, Movants' Motion to Intervene, filed April 11, 2014, is HEREBY DENIED.

IT IS SO ORDERED.

---

[7](...continued)
where "the party is the same in a pending suit, and the cause is the same and the relief is the same").

[8] The Court also denies the parties' informal requests to either: (1) certify the question that it has already ruled on regarding § 667-7 (2008) to the Hawai`i Supreme Court; [Mem. in Opp. at 26-27;] or (2) reconsider the 3/31/14 Order *sua sponte* and consider the Proposed Motion as an amicus brief [Reply at 14].

DATED AT HONOLULU, HAWAII, May 30, 2014.



    /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JULIE M. SIGWART VS. U.S. BANK NATIONAL ASSOCIATION, ET AL; CIVIL NO. 13-00529 LEK-RLP; ORDER DENYING THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION, AND DAVID B. ROSEN'S MOTION TO INTERVENE**